FILED

FEB 11 2021

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| BOBBI PIASECKI, | 1:19-CV-01022-CBK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION; | |
| Defendant. | |

This matter is before the Court on plaintiff Bobbi Piasecki's appeal from the decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), Docs. 1 and 7.

## BACKGROUND

This action arises from plaintiff's application for Social Security disability benefits on March 15, 2016. Plaintiff alleges a disability onset date of January 15, 2016 due to a compressed nerve, fibromyalgia, right knee pain, back pain, neck pain, and obesity. See Admin. Rec. at 72, 168, and 198. Plaintiff also has bilateral carpal tunnel syndrome. Admin. Rec. at 293. Plaintiff claimed problems "lifting, sitting, standing, walking, reaching, using her hands, concentrating, memory, and completing tasks in the Function Report she completed with her application. Doc. 9 at 2 (citing Admin. Rec. at 216). The Social Security Administration ("SSA") initially denied plaintiff's claims on August 17, 2016, and then denied her claims again upon reconsideration on December 1, 2016. Admin. Rec. at 98 and 106.

On March 1, 2018, plaintiff had a hearing before an administrative law judge ("ALJ"); an unfavorable decision was issued on September 10, 2018. Admin. Rec. at 6.

In his final decision, the ALJ used the familiar five-step sequential evaluation to determine disability:

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011) (internal C.F.R. citations omitted).

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 15, 2016, the date of her application for benefits. Admin. Rec. at 11.

At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; radiculopathy of the cervicothoracic region; degenerative joint disease of the

2

bilateral knees; osteoarthritis of the right knee; obesity; fibromyalgia; and right shoulder impingement syndrome. Id. The ALJ also found nine distinct non-severe impairments, including gastroesophageal reflux disease, post-traumatic stress disorder, and depression. Admin. Rec. at 12. The ALJ found that each of plaintiff's non-severe impairments that were discussed at this step were controlled via treatment and medication, or that the conditions had been accessed as minimal by medical professionals in the record. Id. Regarding plaintiff's diagnosis of post-traumatic stress disorder, the ALJ found that though plaintiff had been diagnosed, she was not undergoing any significant treatment. Id.

At step three, the ALJ found that plaintiff did not have an "impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. 404, Subpart P, Appendix 1(20 C.F.R 416.920(d), 416.925 and 416.926). Id.

The ALJ then attributed to plaintiff the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift, carry, push, and pull up to 10 pounds occasionally and less than 10 pounds frequently. She can sit for six hours, stand and/or walk up to two hours in an 8- hour day. She is limited to occasional climbing of ramps & stairs, never climbing ladders or scaffolds, occasional balancing, stooping, kneeling, crouching and crawling. Claimant is further limited to frequent overhead reaching with the right upper extremity and frequent handling, fingering and feeling. Finally, the claimant is limited to no exposure to unprotected heights or moving mechanical parts.

Admin. Rec. at 12-13. In reaching this RFC, the ALJ gave some weight to the opinions of the state agency physicians. The ALJ also partially discredited plaintiff's subjective complaints. The ALJ found that plaintiff's subjective

complaints concerning the intensity and limiting effects of her impairments were not entirely consistent with medical evidence in the record. Admin. Rec. at 13.

At step four, the ALJ found that plaintiff had no past relevant work experience. Admin. Rec. at 15.

At step five, the ALJ found that there were a significant number of jobs in the national economy which plaintiff could perform given her age, education level, past work experience, and RFC. Id. Because plaintiff's RFC limited her to less than the full range of sedentary work, the ALJ consulted a vocational expert ("VE") to understand what sedentary jobs plaintiff could still perform. The VE testified that plaintiff could perform three jobs: (1) document preparer (DOT 249.587-018); (2) callout operator (DOT 237.367-014); and (3) addresser (DOT 209.587-010). Admin. Rec. at 16. The VE also testified, and the ALJ agreed, that these jobs existed in sufficiently large numbers in the national economy—16,200 jobs in total. Id.

On May 15, 2019, the Appeals Council of the Social Security Administration denied plaintiff's request for review, making the ALJ's decision final. Admin. Rec. at 1. Plaintiff then timely filed this action on October 29, 2019, following an extension of time allowed by the Appeals Council. See Admin. Rec. at 22.

Plaintiff argues on appeal that the ALJ failed to properly determine her severe impairments at step two. Specifically, plaintiff contends that the ALJ should have found her carpal tunnel syndrome to be a severe impairment. In addition, plaintiff argues that the ALJ was required to evaluate her mental impairments using a special technique required by SSA regulations.

Defendant responds that the ALJ did not err in his identification of plaintiff's severe impairments, and to the extent that he did, those errors were harmless.

4

Plaintiff next argues that the ALJ failed to properly evaluate whether plaintiff's fibromyalgia was medically equivalent to a listing at step three. Plaintiff argues that the ALJ was required to provide some explanation for this determination, as opposed to summarily stating his judgment.

Defendant argues that plaintiff's impairments do not medically equal a listing and that the ALJ was not required to explain his reasoning.

Plaintiff then argues that the ALJ's RFC determination was not supported by substantial evidence on the record. Plaintiff argues that the ALJ did not sufficiently support his determination with medical evidence and substituted his own judgment for that of medical professionals.

Defendant responds that the ALJ's RFC is supported by substantial evidence in the record and that plaintiff's argument amounts to a disagreement with the ALJ's ultimate conclusions.

Plaintiff's final argument for reversal is that the Commissioner did not meet his burden at step five to identify jobs that plaintiff could perform despite her impairments. Plaintiff contends that the Commissioner was required to find that jobs existed in significant numbers either near where plaintiff lived or at least that they exist in some significant concentration somewhere in the country.

The defendant responds that the Commissioner is only required to identify jobs that exist in a significant number in the national economy and that doing so necessarily finds that they exist in significant numbers somewhere.

## STANDARD OF REVIEW

An individual is considered to be disabled if, *inter alia*, they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, Bernard v. Colvin, 744 F.3d 482, 486

5

(8th Cir. 2014). An individual shall be determined to be disabled "only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Judicial review of the Commissioner's decision that claimant has failed to establish by a preponderance of the evidence that she is disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the Commissioner's conclusions." Draper v. Colvin, 779 F.3d 556, (8th Cir. 2015) (internal quotations omitted) (*quoting* Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). "We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (internal citations omitted).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJs] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

## DISCUSSION

### I.

#### A.

Plaintiff argues that the ALJ failed to identify all of her severe impairments at step two of the sequential evaluation process. Plaintiff contends that her carpal tunnel syndrome was not properly evaluated. Essentially, plaintiff argues that the ALJ could not have sufficiently evaluated plaintiff's carpal tunnel syndrome at step two because the ALJ did not mention carpal tunnel syndrome at that step of the sequential evaluation process.

Step two of the sequential evaluation process is crucial to the ultimate disability determination. If, at step two, a claimant is not found to have an impairment or combination of impairments that is "severe" and meets the duration requirements of 20 C.F.R. 416.909, said claimant will be found not disabled. 20 C.F.R. § 416.920(a)(4)(ii). The Eighth Circuit has held that if a claimant does not have at least one impairment or combination of impairments that is considered severe, said claimant is not disabled. Stratton v. Astrue, 418 F. App'x 581 (8th Cir. 2011) (citing Simmons v. Massanari, 264 F.3d 751, 755 (8th Cir. 2001) (Holding that the sequential evaluation process may be ended at step two if no impairment or combination of impairments is found to be severe.). It is plaintiff's burden to demonstrate a severe medically determinable impairment at step two of the sequential evaluation. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [the Eighth Circuit] ha[s] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. Id. at 708. Stratton also held that an ALJ can be deemed to have implicitly found an impairment to be severe if the ALJ sufficiently discusses it in the RFC determination. Stratton, 418 F. App'x at 581.

It is an open question, however, whether an ALJ's failure to identify a particular severe impairment at step two is itself reversible error. In Nicola v. Astrue, the plaintiff contended her diagnosis of borderline intellectual functioning

7

was a severe impairment and that the ALJ's failure to identify it as such at step two of the sequential analysis was reversible error. 480 F.3d 885, 887 (8th Cir. 2007). The Commissioner conceded that the plaintiff's borderline intellectual functioning should have been considered severe by the ALJ, but argued that the ALJ's failure to do so was harmless error. Id. Nicola reversed the decision of the Commissioner, holding that "the ALJ erred in failing to find that [Nicola's] diagnosis of borderline intellectual functioning was a severe impairment." Id. Nicola stands for the proposition that a failure to find some properly diagnosed impairments to be severe may be reversible error by itself. But the Eighth Circuit has never clarified whether Nicola established a *per se* rule or was limited to the circumstances of that case. Indeed, the Court may have deemed borderline intellectual functioning to be such a severe impairment that failing to classify it as such meant it could not have been properly evaluated by the ALJ.

In the instant case, the ALJ's opinion is essentially bare of any discussion of plaintiff's carpal tunnel syndrome. That said, a failure on the part of the ALJ to identify a severe impairment at step two, without more, can be harmless error. That is so because a finding of severity would not be outcome determinative. The effect of a severity determination on RFC is also ambiguous; whether an impairment is found to be severe should not affect its consideration as a part of the RFC. That is because SSA regulations state that the Commissioner will consider all impairments regardless of severity in determining a claimant's RFC. See 20 C.F.R. § 404.1545 ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Without more, I will not treat a failure to identify plaintiff's carpal tunnel syndrome as a severe impairment as reversible on its own. The ALJ could have still properly addressed the impairment at a later stage of the process.

### B.

Plaintiff argues that the ALJ erred in failing to undertake the Psychiatric Review Technique ("PRTF") when evaluating plaintiff's depression and post traumatic stress disorder ("PTSD"). The ALJ acknowledged the plaintiff had a diagnosis of PTSD and stated that she has complained of depression. Admin. Rec. at 12. He evaluated those impairments and found that they were non-severe.

The ALJ found that plaintiff's depression was non-severe because it had been accessed as "minimal," she has presented with normal judgment and thought content, and she appeared to be well-controlled with medication. As for plaintiff's PTSD, she lacks a longitudinal history of treatment for the disorder and has instructions from her physician to take medications at night to help her sleep despite the PTSD symptoms. In short, the ALJ found that these impairments were well controlled, which means they are also non-severe. Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996) (Impairments that are well-controlled by medication or other treatment are not considered disabling).

The issue is not whether the ALJ's decision in this instance is unsupported by substantial evidence. The issue is that federal regulations demand that an ALJ engage in PRTF when evaluating mental disability. See 20 C.F.R. § 416.920a (when we evaluate the severity of mental impairments . . . we *must* follow a special technique [PRTF] at each level in the administrative review process.) (emphasis added). Thus, it is not left to the discretion of the ALJ to decide whether an alleged mental impairment should be subjected to PRTF analysis. "Although failure to complete the [PRTF] may itself be reversible error, [the Eighth Circuit] has left the door open to harmless-error analysis. [The Circuit Court] has found

9

harmless error where there is no credible evidence of a severe mental impairment." Cuthrell v. Astrue, 702 F.3d 1114, 1118 (8th Cir. 2013) (internal citation omitted). Because there is no question that the ALJ failed to perform PRTF analysis in this case, I will move on to an analysis of whether that failure was harmless.

An ALJ's failure to perform a PRTF analysis may be harmless error when there is no evidence of mental impairment in the administrative record, and the ALJ made a specific finding that any alleged depression was non-severe. Nielson v. Barnhart, 88 Fed.Appx. 145, 147 (8th Cir. 2004) (per curiam). In the instant case, plaintiff has shown no credible evidence of severe mental impairment and the ALJ made a specific finding that both plaintiff's depression and PTSD were non-severe.

The ALJ explained that the record as a whole did not support a finding that plaintiff's mental impairments were severe. Plaintiff did not have a significant history of treatment for PTSD or depression. Her treatments listed on the record were minimal: anti-depressant medication and the certification of a pet turkey as an emotional support animal. The lack of credible evidence of severe mental impairment in the administrative record supports finding that this error on the part of the ALJ was harmless. *Cf.* Cuthrell v. Astrue, 702 F.3d 1114, 1118 (8th Cir. 2013) (Finding that a failure to perform PRTF analysis was not harmless error when the ALJ had specifically found that mental impairment in question was a severe impairment.). Any failure in this regard is harmless.

## II.

Plaintiff next argues that the ALJ failed to properly evaluate whether plaintiff's fibromyalgia was medically equivalent to a listing at step three. At step three of the sequential review, the ALJ must determine whether the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement." 20 C.F.R. §

416.920(a)(4)(iii). If an impairment or combination of impairments equals a listing the claimant will be found to be disabled. Id. In the instant case, the ALJ summarily found that plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled a listing. Admin. Rec. at 12.

It is the law in the Eighth Circuit that "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." Vance v. Berryhill, 860 F.3d 1114, 1118 (8th Cir. 2017); Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."). Furthermore, the burden is on the plaintiff to prove that her impairment meets or equals a listing. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). In this case, the administrative record supports the ALJ's conclusion that plaintiff's impairments do not meet or medically equal a listing.

The standard is a lenient one and the ALJ's ruling must stand if there is substantial evidence supporting it. Fibromyalgia is not one of the listed impairments. Plaintiff's fibromyalgia symptoms must medically equal a listed impairment to satisfy the requirements of step three. Listing 14.09D, which lists certain symptoms of inflammatory arthritis, is often compared to fibromyalgia.

Listing 14.09(D) reads as follows:

Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) limitations of activities of daily living; (2) limitation in maintaining social functioning; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

11

20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.09(D). While plaintiff has complained of severe fatigue and an inability to concentrate, those claims are not well-supported in the record. There is also not significant evidence in the record supporting plaintiff's assertion that she is unable to perform the activities of daily living due to her fibromyalgia. Plaintiff has a number of severe impairments, but whether a combination of them medically equals a listing is a distinct question. Plaintiff has not met her burden of showing that her fibromyalgia medically equals a listing.

Plaintiff argues that her subjective claims were not given sufficient weight, but the ALJ must make a decision based on the record as a whole. "An ALJ may not disregard a claimant's subjective complaints of pain solely because they are not fully supported by objective medical evidence, but may properly discount the subjective complaints if inconsistencies exist in the record as a whole." Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996). The ALJ found that plaintiff has normal spinal range of motion and intact muscular strength as of September 2, 2016. Admin. Rec. at 14; see also Admin. Rec. at Ex. 8F. The record contains substantial evidence supporting the ALJ's conclusion.

### III.

Plaintiff next argues that the ALJ's RFC determination is unsupported by medical evidence in the record. Plaintiff argues that it was the duty of the ALJ to fully and fairly develop the record by seeking clarifying medical opinions.

"The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). When the records of a treating physician or the medical records as a whole are undeveloped concerning a critical issue, the ALJ must seek clarifying statements. Id. at 806. On the other hand, if the record is merely devoid of

information supporting the alleged severity of one of a claimant's impairments, the ALJ is not required to seek out supporting information. Even so, "an ALJ must not substitute his opinions for those of the physician." Combs v. Berryhill, 878 F.3d 642, 647 (8th Cir. 2017) (quoting Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008)). An ALJ may not "play doctor." Pate-Fires v. Astrue, 564 F.3d 935, 947 (8th Cir. 2009).

Other than her complaints of pain, neurologically plaintiff had no muscle weakness. See Admin. Rec. at 453, 490, 504, 520, 564, 595, 639, 653, 660, 907, and 913. On October 23, 2017, a physical examination (after an emergency room visit for a fall) during which plaintiff claimed to have injured her knee, showed that plaintiff's knee strength was 4+/5 on the right and 5/5 on the left. Admin. Rec. at 917.

"In April 2017, an MRI revealed moderate degenerative changes of the acromioclavicular joint and mild degenerative changes on the glenohumeral joint, along with a tear of the bicep's tendon (9F/84)." Admin. Rec. at 13-14. Plaintiff was reported to be doing relatively well after receiving injections in her back. Admin. Rec. at 14. Plaintiff had surgery on her right knee in September 2016, which went well. Admin. Rec. at 646. In a follow-up appointment later that same month, she was reported to be recovering well. Admin. Rec. at 669. Three months after her surgery she was reported to be doing "quite well" overall and her strength was again reported as 4+/5 in that right knee. Admin. Rec. at 682.

In her administrative hearing, plaintiff complained of neck and back pain that was so severe that she could not sit or stand for very long. Admin. Rec. at 47-8. Plaintiff claimed that she began experiencing pain after sitting for "five to fifteen minutes" and would then have problems arising. Admin. Rec. at 48. Plaintiff also claimed that after standing for "ten minutes" her neck would be "on

fire" and she would need to sit and rest. Id. Plaintiff alleged that her daily pain was always a 7-8 out of a maximum of 10. Admin. Rec. at 49.

> The ALJ gave:
>
> partial weight to the state agency's physical opinion of a light Residual Functioning Capacity with occasional postural limitations, as stated by Alice M Davidson, MD (3A), and Kevin White, MD (4A). They stated that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, and sit, stand, and/or walk for six hours in an eight-hour workday, all with normal breaks.

Admin. Rec. at 15. The ALJ eventually arrived at an RFC that incorporated some of plaintiff's own alleged limitations, including a 10-pound lifting limit and a reaching limit, which were mentioned in the administrative hearing. Admin. Rec. at 49 (Plaintiff stated she could not lift more than a half-gallon of milk or a ham.); Admin. Rec. at 62-3 (Plaintiff stated a companion helps her reach items on "top shelves" at the store.). Plaintiff also admitted being able to take care of her own personal grooming. Admin. Rec. at 56.

"Simply put, there was little evidence to support the degree of pain alleged." Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996). The ALJ properly discounted plaintiff's credibility based on his conclusion that her allegations as to the severity of her symptoms were not supported by the overall evidentiary record. Thus, there is ample evidence in the record supporting most of the RFC finding that plaintiff is capable of performing sedentary work. However, the RFC's limitations as to manipulation of objects is not similarly supported.

Plaintiff's bilateral carpal tunnel syndrome is only mentioned once in the whole opinion, when the ALJ states plainly, "[s]he also has bilateral Carpal Tunnel Syndrome (2F/20)." Admin. Rec. at 14. Plaintiff's RFC includes a statement as to her ability to manipulate objects—frequent handling, fingering and feeling—but the ALJ does not explain how this statement relates to plaintiff's carpal tunnel syndrome. Plaintiff's carpal tunnel syndrome is diagnosed in the administrative

14

record, and the ALJ must consider it in determining plaintiff's RFC. But the ALJ did not evaluate it. The ALJ never explained, either explicitly or implicitly, how plaintiff's bilateral carpal tunnel syndrome affected plaintiff's RFC. The fact that the ALJ also failed to discuss carpal tunnel syndrome at step two of the sequential analysis further obscures the impact of the diagnosis on plaintiff's disability application.

An ALJ must consider all severe and non-severe impairments of which the ALJ is aware in determining the RFC. 20 C.F.R. § 404.1545(a)(2). It is inconsequential that the ALJ did not discuss plaintiff's carpal tunnel syndrome earlier in the opinion. The administrative record contains no evidence supporting the ALJ's apparent conclusion that plaintiff's bilateral carpal tunnel syndrome should limit her to only "frequent" handling and fingering. In fact, it is unclear whether "frequent" is a limitation at all. The ALJ's lack of explanation leaves open the question of whether the word "frequent" is meant to imply that plaintiff's carpal tunnel syndrome is no limitation at all. Regardless, the ALJ has a responsibility to consider all of plaintiff's diagnosed impairments of which he is aware. "[T]he ALJ may exclude any alleged impairments that [he] has *properly* rejected as untrue or unsubstantiated." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (internal citation omitted) (emphasis added). But the ALJ cannot properly reject an alleged impairment without first considering it in the opinion. See Long v. Chater, 108 F.3d 185, 187–88 (8th Cir. 1997) (Holding an ALJ properly rejected a plaintiff's subjective complaints after "the ALJ delineated at length the reasons why [the claimant]'s subjective complaints had to be rejected.").

If the ALJ considered plaintiff's carpal tunnel syndrome at all, there is no indication of it in the opinion beyond his acknowledgment that she had been diagnosed. Given the sheer lack of any explanation, the Court is unconvinced that the ALJ properly considered plaintiff's bilateral carpal tunnel syndrome in

determining her RFC. The ALJ must discuss the impairments to be rejected and provide some explanation for his decision.

The ALJ's error was not harmless. Bilateral carpal tunnel syndrome severe enough to limit plaintiff to less than "frequent" handling and fingering would render her unable to perform any of the jobs identified by the VE at step 5 of the sequential analysis.

The RFC is not supported by substantial evidence on the record.

## IV.

Because this Court has held that plaintiff's RFC is unsupported by substantial evidence in the record, plaintiff's final argument that the Commissioner failed to identify jobs that plaintiff could perform under said RFC at step five is moot, and will not be further considered herein.

## ORDER

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment, Doc. 7, is GRANTED, in part.

IT IS FURTHER ORDERED that the decision of the Commissioner is reversed and remanded pursuant to 42 U.S.C. § 405(g) for further proceedings not inconsistent with this opinion. The question to be answered is: what is the significance of plaintiff's diagnosis of bilateral carpal tunnel syndrome and how does that diagnosis affect the RFC finding.

DATED this 5th day of February, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge